[Civ. No. 51837. First Dist., Div. Three. Oct. 19, 1981.]

ENVIRONMENTAL LAW FUND, INC., et al., Plaintiffs and Appellants, v.
CITY OF WATSONVILLE et al., Defendants and Respondents.

712

COUNSEL

Alexander T. Henson for Plaintiffs and Appellants.

Donald R. Haile, City Attorney, Peter S. Hecker, Jessica S. Pers and Heller, Ehrman, White & McAuliffe for Defendants and Respondents.

OPINION

**SCOTT, Acting P. J.**—In August 1980 respondent Wells Fargo Bank applied for and was issued a permit from respondent City of Watsonville to demolish the Marinovich Building. The bank intends to replace the building, which it purchased from the Marinovich family, with a parking lot. Seeking to halt the demolition of what they consider an historic building, appellants Charles Rowe and Environmental Law Fund, Inc., filed a petition for writ of mandamus and a complaint for injunctive and declaratory relief. The trial court denied a preliminary injunction, and this appeal followed. This court has issued a writ of supersedeas, staying demolition pending final disposition of this appeal.

Appellants' argument is that an environmental impact report (EIR) or at least a negative declaration was required prior to issuance of the demolition permit. Appellants acknowledge that an EIR is not required for ministerial projects proposed to be carried out or approved by public agencies, and recognize that the issuance of a building permit is generally presumed to be ministerial. However, appellants urge that approval by both the redevelopment agency and the design review commission was required before this permit was issued, and that such approval injected a discretionary determination into the permit process.

First, we note that ordinarily the grant or denial of a preliminary injunction does not amount to an adjudication of the merits of the controversy. However, here it is apparent from the nature of the injunctive relief requested that the trial court's denial of that injunction must have been based on its determination that there was no reasonable probability that appellants would prevail on the merits. Our task is to determine whether that decision was an abuse of discretion. (*People* v. *Pacific Land Research Co.* (1977) 20 Cal.3d 10, 21 [141 Cal.Rptr. 20, 569 P.2d 125]; *Continental Baking Co.* v. *Katz* (1968) 68 Cal.2d 512, 528 [67 Cal.Rptr. 761, 439 P.2d 889].)

■ Before analyzing appellants' discretionary/ministerial arguments, we focus on what may be a more fundamental question: whether an EIR would have been required even if issuance of this permit were not purely ministerial. The California Environmental Quality Act (hereafter CEQA) (Pub. Resources Code, § 21050 et seq.) requires a local agency to prepare and certify an EIR on any project they propose to carry out or approve which may have a significant effect on the environment. (Pub. Resources Code, §§ 21100, 21151.) Section 21090 of that act provides: "For all purposes of this division all public and private activities or undertakings pursuant to or in furtherance of a redevelopment plan shall be deemed a single project. (See also title 14, Cal. Admin. Code, § 15061, subd. (e) (Guideline).)[1] When an EIR has been prepared for a project, no subsequent EIR shall be required unless one or more of the following events occurs: (1) substantial changes are proposed in the project which will require major revisions of the EIR; (2) substantial changes occur with respect to the circumstances under which the project is being undertaken which will require major revisions of the EIR; (3) new information, which was not known and could not have been known at the time the EIR was certified as complete, becomes available. (Pub. Resources Code, § 21166; see also Guideline 15067.) Guideline 15202 provides that a final EIR shall be conclusively presumed to comply with CEQA unless a legal action is filed challenging the EIR within the period provided by Public Resources Code section 21167, subdivision (c), or unless a subsequent EIR is made necessary by section 15607 of the Guidelines.

The Marinovich Building is within the project boundaries of the city's redevelopment plan, adopted in 1973, and an EIR was prepared for that

---

[1]Title 14, California Administrative Code, section 15000 et seq., contains the state EIR Guidelines to be followed in the implementation of the CEQA.

project at the time of its adoption. Among the objectives of the redevelopment plan were the revitalization of the commercial area and the stimulation of private investment, to improve the city's economic health. If respondent bank's plans to replace the Marinovich Building with a parking lot can be said to be private activity in furtherance of that plan, no subsequent EIR was required unless one of the events specified in section 21166 had occurred. While appellants now argue that Kenneth Cardwell's evaluation of the building is new information within the meaning of section 21166, in their complaint and petition for mandamus they made no such allegation. Instead they alleged that there was *no* pertinent EIR. In light of the statutory scheme, that allegation was insufficient.

Even if appellants had challenged the adequacy of the initial EIR, no subsequent EIR would have been required if issuance of this permit was purely ministerial. Accordingly, to foreclose further litigation, we consider that question.

Appellants urge that according to section E(3) of the city's redevelopment plan, respondent bank's application for a demolition permit should have been submitted to the redevelopment agency for its approval, thereby introducing a discretionary determination into the permit process and triggering the need for an environmental impact assessment. Section E(3) provides in relevant part: "In order to provide adequate safeguards that the process of redevelopment will be carried out pursuant to the plan, agreements for the disposition of land by the agency and owner participation agreements shall include provisions recognizing and requiring that: ... (3) all developers and owner participants shall submit preliminary architectural plans, site and landscape plans and final plans including landscaping and sign plans ... for architectural review and approval by the agency ...."

Respondents' interpretation of section E(3) has evolved considerably during the course of these proceedings. In any event, respondents now argue that section E(3) applies only to the development of land which the city has acquired by eminent domain, and that site plan approval is not required when a private owner seeks to develop property within redevelopment project boundaries. We cannot agree.

The state's Community Redevelopment Law (Health & Saf. Code, § 33000 et seq.) which permits municipal acquisition of land within a project area for redevelopment, also requires a redevelopment agency to

permit owner participation in redevelopment, in conformity with the plan and pursuant to a binding agreement for participation. (See Health & Saf. Code, §§ 33339, 33340, 33345, 33380, 33381.) Consistent with that statutory scheme, Watsonville's redevelopment plan provides for owner participation. (See, e.g., §§ D(1)(a) and D(2) of that plan.) The plain language of section E(3) of that plan requires all such owner participants to submit plans for agency approval. To read section E(3) otherwise would omit what has been written into it, an omission which we are not free to make. (See Code Civ. Proc., § 1858; *First Fed. S. & L. Assn.* v. *Johnson* (1942) 49 Cal.App.2d 465, 470 [122 P.2d 84].)

Nevertheless, although section E(3) requires owner participants such as respondent bank to submit preliminary architectural plans, site and landscape plans, and final plans for architectural review and approval by the agency, nothing in the plain language of that section requires submission of a plan for demolition prior to construction. As we read section E(3), a property owner in the redevelopment project area may apply for and routinely obtain a demolition permit from the city, and then must submit a site plan to the agency, which may or may not approve it. While that scheme presents certain risks both to the property owner and to the redevelopment agency, it is not our task to assess the wisdom of that scheme. (See generally *Bownds* v. *City of Glendale* (1980) 113 Cal.App.3d 875, 883-884 [170 Cal.Rptr. 342].)

We emphasize that while we do read the city's redevelopment plan to require respondent bank to submit its parking lot plans to the agency for its approval, the question of whether the agency has any discretion to withhold that approval is not before us, and we express no view on that issue. We do note a certain lack of clarity in Watsonville's redevelopment plan in that regard. While section E(3) requires agency approval for all owner participation site plans, the plan also specifies the uses permitted in the project area by incorporating the city's zoning ordinances. The plan is silent as to whether the agency has any authority to withhold its approval when an owner participant's site plan is for a permitted use. However, we need not consider the question.

Appellants also contend that design review commission approval was required prior to issuance of the demolition permit, injecting yet another discretionary determination into the permit process. Appellants focus on section 14.11-02 of the Watsonville Municipal Code, which provides, "No building or other permit shall be issued by the Building

Official ..., except after approval of the design by the Design Review Commission in compliance with this chapter." However, appellants take that sentence out of context, and ignore what follows: "The structures and other work for which Design Review shall be required are as follows: ... All new construction ... (c) Any exterior remodeling or alteration or addition of any existing commercial ... building or structure over the value of Five Thousand ... dollars." If the Marinovich Building were to be remodeled, design review commission approval would obviously be required. However, the demolition of a building simply does not come within the purview of that commission.

In sum, neither redevelopment agency approval nor design review commission approval was required for issuance of this demolition permit; that issuance was a ministerial act. Moreover, an EIR was prepared in conjunction with adoption of the redevelopment plan and appellants' petition and complaint below did not attack the sufficiency of that EIR. There was no reasonable probability that appellants would have prevailed on the merits of this controversy, and the trial court did not abuse its discretion in denying the preliminary injunction.

Judgment is affirmed.

Barry-Deal, J., and Anello, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.